IN THE MATTER OF THE WILL OF WILLIAM L. MILLER, Deceased.

**Wills:** DEVISE OF REAL PROPERTY: SALE BY TESTATOR: DISTRIBUTION OF PROCEEDS. A will speaks from the death of the testator with respect to a distribution of all his property, both real and personal; so that where a will provided that real estate then owned by the testator be sold and converted into money and divided among certain legatees in a specified manner, and also contained a residuary clause directing that all personal property be divided among the testator's children in a different manner, the proceeds arising from a sale of the real estate by the testator prior to his death was a conversion of the same into

personal property and should be distributed according to the provisions of the residuary clause governing the distribution of the personalty.

*Appeal from Mahaska District Court.*— HON. W. G. CLEMENTS, Judge.

FRIDAY, OCTOBER 20, 1905.

PROCEEDING to obtain construction of will. The material facts are stated in the opinion. *Reversed.*

*J. F.* and *W. R. Lacey,* for appellants Wyman, Caylor, and Parks.

*J. C. Williams* and *L. C. Blanchard,* for appellees.

WEAVER, J.— William L. Miller, of Mahaska county, Ia., died testate November 4, 1903. His will was executed some four years prior to his death, and is in the following words:

### Last Will and Testament of William L. Miller.

Know all men by these presents, that I, William L. Miller, of Mahaska county, State of Iowa, being in my usual state of health and having full possession of my mental faculties and being desirous of disposing of my worldly affairs, do hereby make, constitute, and declare this to be my last will, hereby revoking all former wills made by me.

First. It is my will that my body have decent burial and that a modest tombstone be erected at my grave.

Second. I will to my son, Levi J. Miller, the homestead forty acres, being the forty (40) that I now live on and being the forty (40) acres that he now is living on and caring for me, being described as follows, to-wit: The northeast ¼ of the southeast ¼ of section 4, township 77, range 16, in fee simple, to the said Levi J. Miller and his heirs.

Third. I will and bequeath that all the rest of my real estate be sold and converted into money and be divided as follows, to-wit: I will and bequeath to my son, Ira C. Miller, 1-16 part of the proceeds therein; to my daughter, Emma

I. Parke, one-eighth (⅛) of the proceeds; to my son, Aaron D. Miller, one-third (1-3) of the proceeds; and I will that the remainder thereof shall go to my son, David S. Miller — it being my intention that the forty (40) acres willed to Levi J. Miller shall be his full share in my estate, having so willed to him on condition that he take care of me for the rest of my days, and for services heretofore rendered.

I hereby nominate and appoint Levi J. Miller as executor of this will, and direct him to carry out this my last will and hereby fully authorize him to sell and convey all the land excepting the northeast ¼ of the southeast ¼ heretofore willed to my son, Levi J. Miller. All the rest of my personal property shall be divided equally among my said children.

In witness whereof, I have hereunto set my hand this 22d day of December, A. D. 1899.

WILLIAM L. MILLER.

This instrument having been duly admitted to probate, question arose as to the proper distribution of the estate, and this proceeding was instituted by George F. Smith, administrator with will annexed, to obtain the order or judgment of the court for his guidance. It appears without controversy that at the date of the will the testator owned in fee simple the 40-acre tract specifically described therein and two other tracts, aggregating about 45 acres, in the same vicinity. Within a few days after the will was executed he conveyed the homestead of 40 acres to the devisee Levi J. Miller. Unfortunately the parties to this appeal have not deemed it necessary to present a copy of this instrument in their abstracts, but the same is described as a " deed or contract," containing a provision to the effect that it is made in consideration that William L. Miller (testator) is to have a home with the said Levi J. Miller upon said land, who is to board and care for the grantor, and at the death of the grantor the title to the land is to become " full and perfect in Levi J. Miller and that said deed or contract at the death of William L. Miller is to become null and void."

Afterward, on April 24, 1902, William L. Miller sold

and conveyed all his remaining real estate to Levi J. Miller, taking the promissory notes of the latter, secured by mortgage for a part or all of the agreed price. At the date of his death William L. Miller owned no real estate, but among the items of the personal estate left by him were some or all of the promissory notes given him by Levi J. Miller as above stated. From this changed condition of the property and estate of the testator has arisen the doubt and controversy as to its proper distribution among the beneficiaries of the will.

The questions presented and argued are in substance: (1) Are the promissory notes received by the testator for the land, other than the homestead tract, sold by him after the date of the will and now in the hands of the administrator, to be treated as a part of the general personal estate and distributed under the last or residuary clause of the will, or are these notes to be distributed under the third clause to the persons and in the proportions therein described? (2) If the notes or moneys arising from the sale of such land in the testator's lifetime fall into the general personal estate for distribution under the residuary clause, is Levi J. Miller entitled to share therein?

To a full understanding of the judgment entered, it should be said that at the date of the will William L. Miller was evidently a widower, and that the persons named in the will, Levi J. Miller, Aaron D. Miller, Ira C. Miller, Emma I. Parke, and David S. Miller, appear to have been his only children and heirs at law. Though not expressly stated, it would also appear that the son Ira C. Miller has since died, and that whatever interest he was entitled to under the will has passed to his children, Hattie L. Wymore and Mattie V. Caylor, who are made parties to this proceeding.

The trial court first held and decreed that by the sale of the land in his lifetime the provisions made by the third clause of the will were adeemed or revoked, and that the entire personal estate should be distributed under the re-

siduary clause, one-fourth each to Emma I. Parke, Aaron D. Miller, and David S. Miller, and one-eighth each to Hattie L. Wymore and Mattie V. Caylor. Later, and during the same term, the court reconsidered its decision, reaching the opposite conclusion, and decreed that the promissory notes referred to should be divided and distributed under the third clause of the will, to Emma I. Parke one-eighth, to Aaron D. Miller one-third, to Hattie L. Wymore and Mattie V. Caylor each one thirty-second, and the remainder to David S. Miller. From this decision, Hattie L. Wymore and Mattie V. Caylor have appealed.

Levi J. Miller has also perfected an appeal, but, not having filed any argument, it cannot be considered, and will be dismissed. With this last-mentioned appeal disposed of, the controversy before us is narrowed down to the single question whether the promissory notes given to the testator for the price of real estate sold by him are to be distributed under the third paragraph of the will. To properly answer this inquiry, it becomes material to consider the date from which the will is in law held to speak.

I. It may be conceded that at common law, or at least after statute 32 Henry VIII, a testamentary disposition of real estate was held to speak from the date of the will, and that after-acquired lands were not a subject of devise. *Langford v. Pitt,* 2 P. Wms. 629; *Girard v. Mayor,* 4 Rawle, 323, (26 Am. Dec. 145); Gilbert on Devises, 136; *McKinnon v. Thompson,* 3 Johns. Ch. 307.

That rule has been abrogated in England by statute 1. Victoria, c. 26, and in this country by legislative enactments in nearly, if not quite, all of the states of the Union. Our own statute (Code, secs. 3270, 3271), though differing somewhat from the enactments of other states on this subject, effects the same general purpose and does away with an artificial rule for the continued observance, of which no good reason exists. It has long been the law that a testamentary disposition of personal estate speaks from the date of the

testator's death, and not from the date of the will, and the effect of the statute to which we have referred is to abolish the common-law distinction in this respect between the two classes of property, and apply to both the rule which has always obtained as to personalty. Such was our holding in *Briggs v. Briggs,* 69 Iowa, 617. See, also, *Wynne v. Wynne,* 23 Miss. 251 (57 Am. Dec. 139). If, then, we are to consider the third clause of the will before us as carrying a devise of real estate then under the statute to which we have referred that devise must be satisfied or carried into effect, if at all, by applying it to real estate of which the testator died seised.

As it is conceded that he owned no real property whatever at the date of his death, it follows of necessity that any devise made therein fails, not necessarily because of an ademption, a doctrine which, technically speaking, is applicable solely to bequests of personalty, but because the testator left no real estate with which to satisfy it. The conveyance of the subject of the devise operates as a revocation of the will to the extent of the property thus disposed of. *Warren v. Taylor,* 56 Iowa, 182. See, also, cases cited in 30 Am. & Eng. Ency. Law (2d Ed.) 622, 623. On the theory, however, that the will speaks from the death of the testator and with reference to his estate as it may then exist, it is perhaps not strictly accurate to speak of the result as a " revocation," but the devise fails because, when the will becomes effective, the testator has no property within the terms of the gift. *Warren v. Taylor,* 56 Iowa, 192; *McNaughton v. McNaughton,* 34 N. Y. 204.

It is equally well settled that upon sale of devised real property by the testator the proceeds of such sale of which he may die possessed will not be substituted for the property itself, unless a direction so to do is found in the will. *Adams v. Winne,* 7 Paige, 97; *Gilbert v. Gilbert,* 9 Barb. 532.

II.    It is argued on part of appellee that the provisions

of the will directing the sale of the real estate and a distribution of the proceeds among certain named beneficiaries calls for an application of the doctrine of equitable conversion, and that the gifts provided for in the third clause are to be regarded and treated as bequests of personalty, and not devises of real estate. This proposition we may concede to be sound, but it does not change the result. In the absence of a contrary intent, expressed or clearly implied, in the will, the equitable conversion of real estate into money for the purposes of distribution among the objects of the testator's bounty takes place as from the date of his death. *Laird's Appeal*, 85 Pa. 343; *Underwood v. Curlis*, 127 N. Y. 533 (28 N. E. 585); 9 Cyc. note 49. It follows of necessity that the benefit of this rule by which real estate is equitably transmuted into personalty for the purposes of distribution can be asserted by the appellees only as to such lands as the testator was seised of at the time the will became effective by his decease. The bequests provided for in the third clause are not of the proceeds of the sale of lands made by the testator in his lifetime, but proceeds of sales to be made by the executor after his death, and, if it so happen that at his death he is not the owner of any land upon which the power given to the executor can be exercised, it results that this clause never became operative.

This distinction is very clearly recognized and enforced in *McNaughton v. McNaughton*, 34 N. Y. 201. In that case the testator, after devising to his wife all his personal estate absolutely and all his real estate for life, directed that upon her death the real estate be sold and the proceeds thereof divided among his nieces and nephews. After the execution of his will he sold and conveyed a farm, which was the principal part of his real estate, taking in part payment therefor a bond and mortgage, which being unpaid at the date of his death passed into the hands of the executor. Two years later the widow died. The representatives of the widow's estate laid claim to the bond and mortgage on the

theory that she became entitled to the same absolutely under the bequest to her of all the testator's personalty, while the nephews and nieces claimed that under the provision of the will in their favor the executor must account for the bond and mortgage to them. Their demand was in all respects parallel to that of the appellees in the case before us, and rested upon the same theory that the sale of the land by the testator did not avoid the devise or bequest in their favor, and that their right attached to the proceeds of the sale on hand at the death of the testator the same as if he had died seised of the real estate and the executor had received the bond and mortgage upon a sale made by himself under the power given by the will. This contention was overruled by the New York court, and the right to the property in controversy was held to have passed to the widow absolutely. The court says:

When the will took effect by the death of the testator, the farm which he owned at its date had ceased to be a portion of his real estate. If there had been a specific devise to the appellants of the farm, the sale of it by the donor in his lifetime would have operated as a revocation of the gift. They would have acquired no interest in the bond and mortgage, though given for a portion of the purchase money. The rule on this subject is well settled. There is no specific gift by the testator of the farm or its proceeds. He gives his real estate to the widow for life and its avails to the appellants after her decease. The provision in her favor is a strict devise, but the gift to the ultimate donees is in the nature of a pecuniary bequest. For the purpose of giving it effect according to the presumed intent, the real estate is converted into personal property from the death of the widow when the sale was to be made and the avails divided among the nephews and nieces.

Referring to the effect of the statute which abolished the distinction between real estate and personalty as to the date from which a will speaks, the court further says: " A general devise of real estate has now in this respect the same

effect with a general bequest of personal property, and the gift in either case embraces only such property as the donor owns at the time of the decease answering the descriptive terms of the will." To an argument which is also pressed upon our attention in this case, the writer of the opinion, Mr. Justice Porter, responds: " It is claimed that the testator intended to bequeath specifically to the appellants the avails of the farm, and that in making the sale he was merely anticipating the execution of a power conferred by the will in furtherance of the object of the gift. The bequest was of the proceeds of the sale of his real estate, and in that sense was specific, but it was in no sense a specific bequest of the proceeds of the farm which he afterwards sold. If the latter had been its character, it may well be questioned whether the sale would have operated as an ademption or revocation of the gift. But in this case no question of ademption or revocation arises, as the testator gave neither the farm nor its avails to the appellant. The same rule has been applied to a very similar case by the Supreme Court of Maine. *Emery v. Union Soc.,* 79 Me. 334 (9 Atl. Rep. 891). See, also, *Balliet's Appeal,* 14 Pa. 451.

To hold otherwise and to say that upon the death of a testator the donee of a gift, the subject of which has been sold by such testator in his lifetime, may pursue and lay claim to the proceeds in the hands of the executor, would be to open the door to vexatious litigation, and delay the settlement of estates. The case of *Boland v. Tiernay,* 118 Iowa, 62, which is much relied upon by counsel for appellee, does not appear to us to be in point. If applicable at all, it is only upon the proposition that a testamentary disposition of land which is directed to be sold and proceeds divided, works an equitable conversion of the realty into personal estate for the purposes of its distribution. But, as we have already said, this effect may be conceded without reaching the conclusion arrived at by the trial court. It is, however, an equitable conversion, not of the land owned by the testator

at the will three years before his death, but of such lands, if any, as he may have at the time of his death.    Of other cases cited we find none going to the extent claimed by the appellees.

It is not contended that the legacies provided by the third clause of the will are of a general nature and payable from the estate at large.    They are bequests in certain, definite shares in the proceeds of the sale of lands coming within the description contained in the will, and neither express nor imply any charge or burden upon the estate generally.    To this extent at least, the bequests are specific, and the death of the testator without any lands with which to discharge or satisfy them either in whole or in part renders them inoperative.

Such being the case, the promissory notes in controversy must be distributed under the residuary clause of the will which provides for distribution in equal shares among the children of the testator, other than Levi J. Miller, substantially as was first ordered by the trial court.

For the reasons above indicated, the order appealed from is reversed and cause remanded for further proceedings in harmony with the opinion.    *Reversed.*