RALPH E. HEILEMAN, Executor, et al., Appellees, v. ALMOR DAKAN, Appellant.

No. 40482.

DECEMBER 9, 1930.

*P. E. Roadifer,* for appellant.

*William P. Welch,* for appellees.

ALBERT, J.—On the 15th day of April, 1926, Allen Stoker executed his last will and testament. After providing for the payment of his debts in Item 1, it reads:

Item 2. "To my grandson, Almor Dakan, I will and devise the sum of $8,000.00 same to be paid to him within two years from the time of my death.

Item 3. "All the rest, residue and remainder of my estate,

real and personal and mixed, of which I may die seized or possessed, but to which I may be entitled, I will, bequeath, and devise in equal shares to my four children named as follows: Ada M. Shadden, Nellie L. Dollen, Edith A. Burke and Lloyd Stoker.''

Allen Stoker died on the 15th day of January, 1929, and this will was duly probated. Attached to said will at the time it was found among his papers was the following receipt:

"Logan, Iowa,

"March 5, 1928.

"Received of Allen Stoker $4,000.00 in payment of my share of his estate. [Signed] Almor Dakan.''

It is the claim of the appellees herein that the bequest of $8,000 in the will of Allen Stoker is satisfied by the payment to Almor Dakan by Stoker of the $4,000, payment of which is evi-  denced by the above quoted receipt. The question of whether this payment amounts to a satisfaction of the legacy depends upon the intent of the testator in making it, and extrinsic evidence is admissible to aid in ascertaining such intention. *Johnson v. McDowell*, 154 Iowa 38.

Accurately speaking, the term ''ademption'' of a legacy is not applicable to the facts we have before us. ''Ademption'' is properly applied when the legacy is specific, and ''satisfaction'' is a more accurate term when the legacy is general, as it is in this case. It is a well recognized rule that, when the testator is the parent of, or stands *in loco parentis* to, the legatee, a subsequent gift to the legatee is presumed to be in satisfaction of the legacy. But where we have a situation, as in this case, of a grandfather and a grandchild (the child not being shown to be a member of the grandfather's family), we held in *In re Estate of Youngerman*, 136 Iowa 488, that the grandchild was a stranger, and that this presumption did not attach.

In *In re Estate of Brown*, 139 Iowa 219, l. c. 225, we said:

''A general legacy may be satisfied, although not, strictly speaking, adeemed. It is this which distinguishes ademption from satisfaction. One depends upon the intention of the testator as inferred from his acts, and the other, upon the extinction of the

thing or fund granted. [Citing cases.] When a general legacy is given of a sum of money without regard to any particular fund, and thereafter testator pays this legacy to the legatee, or advances him even a small sum with intent to discharge the legacy or to substitute the advancement for the bequest, the legacy is satisfied, or, as it is sometimes said, adeemed. When the amount of the advancement or gift is smaller than the legacy, the satisfaction is held complete, not for the reason that the smaller sum is regarded as payment of the larger, but by reason of the intent of the testator to substitute the smaller for the larger, and to reduce the amount of the general legacy. The doctrine of satisfaction depends very largely, if not altogether, upon the intent of the testator.''

We therefore turn to the record, to determine what the intention of the testator, Allen Stoker, was, at the time this $4,000 was paid and the above receipt taken.

It appears from the evidence that Allen Stoker had the four children named in the will living, and one daughter dead, and Almor Dakan was the son and sole heir of the dead daughter. Stoker had, after the making of his will, divided some of his land among his children, and in this division did not forget the grandson. Later, he gave his grandson $1,000 and on March 5, 1928, gave each of his four children $5,000, and on that day, gave Almor Dakan $4,000, and took from him the receipt above set out.

The only testimony with reference to the making of this receipt comes from the witness Wessells, cashier of a bank in Logan, who testified, in substance:

''He [Allen Stoker] came in and asked me to draw up a receipt. I made out two or three receipts, which were destroyed. The first receipt I drew up was about the regular form, reciting: 'Received of Allen Stoker $4,000 as my share of his estate.' Mr. Stoker said, 'I don't want it that way.' The second receipt was about the same, and I think I said, 'a share of my estate,'—a little different from the first. Then Mr. Stoker dictated the words that are on Exhibit 2 [the receipt set out], and I wrote the exact words. I wrote out a simple receipt, which is the form we use. He said it was not what he wanted. He said, 'It shows that it is a part of my estate;' and I wrote another one for him.''

This witness further testified:

"The substance of the second receipt which I drew for him was: 'Received of Allen Stoker the sum of $4,000 as a part of my share of his estate.' I read it to him several times, and he said that was not what he wanted. I told him to dictate just the words he wanted used, and the third receipt [Exhibit No. 2] I wrote as he dictated it. There was nothing said in the conversation between us that this was to be a full share of his estate. I had an understanding that he was making a division to the other children at the time, and this receipt was in connection with that. Aside from what he dictated, the only direction he gave me was, he wanted a receipt for $4,000, a part of his estate. That was what he said first. He then dictated Exhibit No. 2."

Martin Burke, the husband of Edith Burke, testifies to a conversation with Almor Dakan in March, 1929, in which Almor asked the witness, "Haven't I got more coming?" He (Almor Dakan) said he received a separate settlement; that he signed nothing but a scrap of paper, but thought he had more coming.

The executor testified that he found this will and the receipt of Almor Dakan attached thereto, in an envelope in the safe of the deceased, and the receipt was fastened to the will with a pin or clip.

As to the receipt heretofore set out, Dakan admits the signing and execution of the same; that he received a check for $4,000 from Allen Stoker at the time; and that this check was cashed, and he received the money. The question as to the intent of the testator on March 5, 1928, when he took this receipt, is the one to be determined. It will be noted that the receipt acknowledges the receipt of the $4,000 "in payment of my share of his estate." These words being the dictated language of the testator, who was a layman, the question is, What construction shall be placed upon them, in the light of the other evidence in the case?

In the absence of a showing to the contrary, words and phrases used by a layman are to be construed in the ordinary and common signification thereof. Viewing these words and phrases in the light of this rule and the evidence of the circumstances and conditions surrounding the making of this receipt in the first instance by Allen Stoker, we can reach no other conclusion than that he intended by the payment of this $4,000 to end all of the

rights of Almor Dakan in his estate; in other words, that he intended by this payment to satisfy the $8,000 legacy given to Dakan in his will.

This case having been tried as a law action, we give the same weight to the decision of the lower court as we would to the verdict of a jury. Appellant insists, however, that this matter  was in the wrong court, being tried in probate when it should have been tried in equity. If there be anything in this contention, appellant had his remedy by a motion to transfer to the proper docket, as provided by Sections 10944 and 10946, Code, 1927.

The appellant suggests, but does not seriously urge, that the court erred in not permitting him to show a conversation which  took place between him and Allen Stoker at the time this receipt was executed and delivered. The court rightfully sustained an objection to this testimony on the ground that the witness was incompetent, under Section 11257, Code, 1927.

We find no error in the record which would warrant us in reversing the district court.—*Affirmed.*

MORLING, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.