H. A. BOEHM, Executor, Plaintiff, Appellee, v. MAGGIE ROHLFS et al., Defendants, Appellants, RUTH DUTTER ROHLFS et al., Defendants, Appellees, GEORGE F. CLAUSEN, Defendant.

No. 44036.

November 23, 1937.

Frank Porter, Wm. H. Frawley, Jr., A. J. Sutherland, and E. C. Schroeder, for appellees.

Mahoney & Mackey and F. V. McManamy, for appellants.

HAMILTON, C. J.—Hansen F. Clausen, a bachelor, a resident of Ogden, Boone County, Iowa, made and executed his last will and testament on the 14th day of October, 1929, and thereafter departed this life on January 10, 1933. His will was duly admitted to probate. On May 6, 1936, the executor brought this action in equity, stating that doubts had arisen as to the owner-

ship of the remainder estate, and the method of distribution of the estate, and asking and praying that said will be construed, and the rights of the parties determined, and each and all of the defendants be required to interplead and submit their respective rights under the will to the court for determination, and that the court make such order in relation to the duties of the executor as to the distribution of the estate as the proper construction of the will requires. The interested parties appeared and answered, as indicated in the statement of the case on the title page of this opinion, and the case was decided as therein indicated.

Omitting the formal parts of the will, it provides:

"1. I direct that all my just debts and funeral expenses be paid out of my personal property as soon as convenient after my decease.

"2. I direct that the executor of my estate, shall, as soon as convenient pay from the cash assets of my estate to my five (5) nieces, Freda, Amy, Anna, Delsie, Luella, the daughters of my sister, Maggie Rohlfs and her husband, Hans Rohlfs, the sum of Five Hundred Dollars ($500.00) cash, to each of them. And to my brother, George F. Clausen, One Hundred Dollars.

"3. I direct that all the remainder of my estate, consisting mainly of my 120 acre farm, described as the North one-half of the Southeast quarter and the Southwest quarter of the Southeast quarter of Section Twenty-eight, Township Eighty-four, Range Twenty-eight, Amaqua Twp. Boone County, Iowa, and the remainder of such personal assets as there are after having made the above distributions, shall be held intact, and all the income therefrom, after paying taxes and upkeep thereon shall inure for and to the benefit of my sister, Maggie Rohlfs, during her natural life. Then after the death of my sister, Maggie Rohlfs, all of said portion of my estate, including the 120 acres of land above described, held for the benefits of my sister, Maggie Rohlfs, I give and bequeath to my nephew, Harry Rohlfs, the son of my sister Maggie, providing he has reached his majority. Should it occur that both, I and my sister Maggie Rohlfs, pass away, before said Harry Rohlfs, has reached his majority, it is my wish that H. A. Boehm of Ogden, Iowa, the Executor named hereafter, be appointed as his guardian, until he does reach his majority."

H. A. Boehm of Ogden, Iowa, was named as executor.

The decision of this case rests largely on whether Harry Rohlfs, the remainderman, had reached his majority by marriage at the time of his death. Harry Rohlfs was born January 1, 1915, in Minnesota. When he was about one year of age he moved from Minnesota with his parents to the state of Wisconsin, where they have resided ever since. Ruth Dutter was born March 10, 1920. She was a resident of Wisconsin. On September 24, 1934, Harry Rohlfs, who was 19 years of age past, and Ruth Dutter, who was a few months past 14 years of age, were married. It appears that they first applied for a license in the state of Wisconsin, but failing to obtain the same, they went over into the neighboring state of Minnesota, and there obtained a license and were married, and on the same day returned to Wisconsin to live. A child, Kenneth Harry Rohlfs, was afterwards born to them. Ruth Dutter's father was dead and her mother signed a written consent to her marriage. Harry Rohlfs' mother, Maggie Rohlfs, signed a written consent to his marriage. Harry Rohlfs was killed in an automobile accident on November 9, 1935. The evidence shows that after their marriage they immediately began living together and continued to live together as husband and wife until his death.

As stated by the trial court in his written opinion:

"The questions to be determined in this case are as follows: (1) Are the legatees named in the second paragraph of the will entitled to have their $500 cash bequest paid out of the proceeds of the real estate in case the cash assets of the estate are insufficient to pay these bequests. (2) Did Harry Rohlfs 'reach his majority' by his marriage on September 24, 1934, within the meaning of that term as used in the will. (3) Was the bequest of the remainder of the estate to Harry Rohlfs a vested or contingent remainder."

In this state the period of minority extends to the age of 21 years, but all minors attain their majority by marriage. Section 10492, Code 1935. However, on this phase of the matter the appellant contends that the marriage of Harry Rohlfs and Ruth Dutter was null and void and therefore this provision of the Iowa statute with reference to minors reaching their majority by marriage does not apply. In this connection the Wisconsin statutes and the Minnesota statutes bearing on this matter were introduced in evidence. From these we learn that under the

Wisconsin law (section 245.02), every male person of 18 years and female of 15 years shall be capable of contracting marriage if otherwise competent. This couple was married in Minnesota and the Minnesota statute (Mason's Minn. St. 1927, §8563) is similar to the Wisconsin statute except it provides the female shall be 16 years of age, but may be married at 15 with the consent of the parents and approval of the judge, etc. Among the provisions of the Wisconsin statutes (section 245.04) is the following:

"If any person residing and intending to continue to reside in this state who is disabled or prohibited from contracting marriage under the laws of this state shall go into another state or country and there contract a marriage prohibited and declared void by the laws of this state, such marriage shall be null and void for all purposes in this state with the same effect as though such prohibited marriage had been entered into in this state."

Appellant brings forth this provision, contending that these parties went to the state of Minnesota for the purpose of circumventing the Wisconsin law and intended to and did return to Wisconsin immediately and continued to reside in that state.

■■■ The phrase contained in the above statutory provision, "any person * * * who is disabled or prohibited from contracting marriage" is no doubt open to judicial construction with reference to whether or not it applies to persons under the age of statutory consent but otherwise competent. However, as we view the matter, this statute has no application to the situation confronting the court in the instant case. Generally speaking, a marriage valid where made is valid everywhere. There are, of course, some exceptions to this general rule. 5 R. C. L., par. 74, note 15. This rule is recognized in this state. Dudley v. Dudley, 151 Iowa 142, 145, 130 N. W. 785, 32 L. R. A. (N. S.) 1170. The marriage was voidable but not void. Goodwin v. Thompson, 2 G. Greene, 329, 333. State v. Lowell, 78 Minn. 166, 80 N. W. 877, 46 L. R. A. 440, 79 Am. St. Rep. 358; State v. Cone, 86 Wisc. 498, 57 N. W. 50. Our statute, section 10428 provides:

"A marriage between a male of sixteen and a female of fourteen years of age is valid; but if either party has not attained the age thus fixed, the marriage will be a nullity or not, at the option of such party, made known at any time before he or she is six months older than the age thus fixed."

Void marriages are listed under another section of our code (section 10445).

 This marriage was solemnized in the State of Minnesota and its validity is to be determined by the laws of that state. The Minnesota statute is similar to ours, except the age of consent is for males 18 and females 16 (section 8563, Mason's Minn. St. 1927). In Minnesota prohibited marriages are also listed under another section (section 8564). Furthermore, common law marriages are recognized in both the state of Iowa, and the State of Minnesota. LeSuer v. LeSuer, 122 Minn. 407, 142 N. W. 593; In re Noser's Estate (Ahneman v. Noser), 180 Minn. 463, 231 N. W. 199; Reppert v. Reppert, 214 Iowa 17, 241 N. W. 487; Hoese v. Hoese, 205 Iowa 313, 217 N. W. 860. In recent months child marriages have undergone wide publicity in this country through the press, and this wholesome airing of the subject may result in more stringent laws in some of the states of the Union. Whether this will result in bettering such undesirable conditions is a controversial question and has been the subject of much debate for centuries. At present, by the great weight of authority, the rule is that a marriage where one of the parties is under the age of consent but who is competent by the common law is not void, but merely voidable. Goodwin v. Thompson, supra; State v. Lowell, supra, 78 Minn. 166, 80 N. W. 877, 46 L. R. A. 440, 79 Am. St. Rep. 358. See, also, Willits v. Willits, 76 Neb. 228, 107 N. W. 379, 5 L. R. A. (N. S.) 767, 14 Ann. Cas. 883; In re matter of Hollopeter, 52 Wash. 41, 100 Pac. 159, 21 L. R. A. (N. S.) 847, 132 Am. St. Rep. 952, 17 Ann. Cas. 91; Browning v. Browning, 89 Kan. 98, 130 Pac. 852, L. R. A. 1916C 737, Ann. Cas. 1914C, 1288; Swenson v. Swenson, 179 Wis. 536, 192 N. W. 70. Had Harry Rohlfs lived, and these young people continued to live together as they did for more than a year, and no action been taken by either of them to disaffirm or annul their marriage, there is nothing to be found, either in the statutory law of this state, or of Minnesota, nor in the common law of this country, that renders this a void marriage. As was wisely said by the able trial court: "Because young people sometimes indiscreetly get married before they reach the legal age, it is not the policy of the law to impose upon them and especially their innocent offspring, the distressing penalties that would result if the marriage was held to be absolutely void, and it would be especially harsh and unwarranted to so hold if neither of the young people asked

to have the marriage annulled after arriving at the age where either could have it set aside.'' The mothers of both these young people, acting for the best, perhaps, under the delicate circumstances that appear to have existed, gave their consent to the marriage substantially in accordance with the statutory provisions of the Minnesota law. Hence, we conclude that within the meaning of section 10492, Code of Iowa, 1935, Harry Rohlfs had attained his majority by marriage.

▮▮▮ The real estate involved being situated in the state of Iowa, and the testator being a resident of the state of Iowa at the time of his decease and for many years prior thereto, the provisions of the will with reference to both the real and personal property will be governed by the laws of this state. Likewise, the question as to when the legatee or devisee named in said will attains majority is to be determined according to the laws of the state of the testator's domicile. 12 C. J. p. 459, §44; Harding v. Schapiro, 120 Md. 541, 87 A. 951; Peet v. Peet, 229 Ill. 341, 82 N. E. 376, 13 L. R. A. (N. S.) 780, 11 Ann. Cas. 492; In re Warner's Estate, 209 Iowa 948, 229 N. W. 241; Olson v. Weber, 194 Iowa 512, 187 N. W. 465, 27 A. L. R. 1370; Ford v. Ford, 70 Wis. 19, 33 N. W. 188, 5 Am. St. Rep. 117; 5 R. C. L. 1019, §116; Hopp v. Petkin, 222 Iowa 609, 269 N. W. 758; Putbrees v. James, 162 Iowa 618, 144 N. W. 607; Ehler v. Ehler, 214 Iowa 789, 243 N. W. 591.

▮▮▮ Appellant also contends that the legacies are a charge upon the real estate. The trial court held against appellant on this contention, and we are inclined to agree. The will expressly states that these legacies are to be paid out of the ''cash assets'' of the estate. In the absence of any provisions of the will to the contrary, either express or implied, a legacy is payable out of the personal estate only, and any implication of this character must arise out of the language in the will, and not by reason of the mere circumstances of the parties, such as that there is no personal estate from which the legacies can be paid. Morey v. Morey, 113 Iowa 152, 84 N. W. 1039; Lacey v. Collins, 134 Iowa 583, 112 N. W. 101. The language of this will contains no such implications.

▮▮▮ The third and last proposition involves the ever troublesome question of whether the estate in remainder was vested or contingent. In construing a will, the first consideration is to ascertain, if possible, the intention of the testator, and to give

effect to such intention if lawful and not against public policy. This must be ascertained from the provisions of the will itself where the language is plain and unambiguous. Guilford v. Gardner, 180 Iowa 1210, 162 N. W. 261; Chapman v. Newell, 146 Iowa 415, 125 N. W. 324; Gilmore v. Jenkins, 129 Iowa 686, 106 N. W. 193, 6 Ann. Cas. 1008; Blackett v. Ziegler, 153 Iowa 344, 133 N. W. 901, 37 L. R. A. (N. S.) 291, Ann. Cas. 1913E, 115. Testator's intent, clearly and definitely ascertained, must govern in the absence of legal impediments. In re Etzel's Estate, 211 Iowa 700, 234 N. W. 210. Ordinarily, the testator's intent must be determined by the language of the will. Fulton v. Fulton, 179 Iowa 948, 162 N. W. 253, L. R. A. 1918E, 1080. The plain effect of the language as used in a will is not to be varied by external proof of what effect was really intended. But where the language is more or less obscure, or the meaning is hidden and there exists what is known in the law as a latent ambiguity, parol evidence may be resorted to for the purpose of making intelligible in the will that which cannot without its aid be understood or resolving a doubtful interpretation. Moran v. Moran, 104 Iowa 216, 73 N. W. 617, 39 L. R. A. 204, 65 Am. St. Rep. 443. We have many times said that a will must be read in all its parts and in the light of the admitted circumstances under which it was made, in order to determine its meaning. Warden v. Overman, 155 Iowa 1, 135 N. W. 649. The court should, as far as possible, put himself in the position of the testator, and take into consideration the circumstances surrounding him when the will was executed. Ironside v. Ironside, 150 Iowa 628, 130 N. W. 414.

Another rule to be observed in considering this question of vested or contingent remainders is that the law favors vested estates, and that unless it clearly appears that a devise was intended to be conditional, it would be presumed to vest on the death of the testator. Haviland v. Haviland, 130 Iowa 611, 105 N. W. 354, 5 L. R. A. (N. S.) 281; In re Freeman's Estate, 146 Iowa 38, 124 N. W. 804; Lingo v. Smith, 174 Iowa 461, 156 N. W. 402; Toner, Ex'r. v. Collins, 67 Iowa 369, 25 N. W. 287, 56 Am. Rep. 346. For an extended note, see 71 A. L. R. 1051.

There is some ambiguity or obscurity in the meaning of the proviso contained in Paragraph 3 of the will. The testator, after saying that his farm shall be kept intact, and all the income therefrom, after paying taxes and upkeep thereon, shall inure

for and to the benefit of his sister during her natural life, states that after the death of his sister the 120 acres of land in fee and the remainder of such personal assets as there are after having made the distributions provided for above, shall be disposed of as follows: "* * * I give and bequeath to my nephew, Harry Rohlfs, the son of my sister, Maggie, providing he has reached his majority. Should it occur that both I and my sister, Maggie Rohlfs pass away before said Harry Rohlfs has reached his majority, it is my wish that H. A. Boehm of Ogden, Iowa, the executor named hereafter, be appointed as his guardian, until he does reach his majority." The extrinsic evidence touching the surrounding circumstances which the court permitted to be introduced in evidence, together with the provisions of the will, and the fact that there was no bequest over, clearly indicates to our minds that it was the plain intent of the testator that his nephew who is the only male descendant in his family, was in all events to become the title holder of this farm, and the remainder of the personal property.

The testator. was a bachelor, born in Germany. He had one brother living, and this sister, Maggie Rohlfs, whose children were all girls, except Harry. Another relative had made a will providing quite generously for the girls, but had made no provision for this male relative. When we give effect—and it is our duty to give effect to all the language of the will, so far as possible—to the provision with reference to the appointment of a guardian, we think it must be held to indicate quite clearly that it was only the enjoyment which the testator intended to postpone. Had he intended the estate to go elsewhere in the event this nephew had not reached his majority prior to testator's death or the death of his sister, Maggie, the provision with reference to the guardianship would have been entirely unnecessary. This language indicates that the testator contemplated that a condition might arise whereby this boy would not be capable of taking over and managing the property in the event of the death of his sister, Maggie Rohlfs, and his own death, before the boy reached his majority, and in that event a guardian was to be appointed, and the guardian was to take charge of this property until Harry reached his majority. The matter is not free from doubt, and there can be found language in some of the cases involving the construction of wills where similar expressions are used, where the court has held the remainder to be

contingent. But there are none, we think, where the facts are exactly similar, and we are content to leave undisturbed the construction placed thereon by the trial court.

It is the intent that governs; and while courts may not make wills for persons, it is undoubtedly the duty of the court to give effect to the intent and purpose of the testator insofar as possible. He had in mind all his relatives. They are all mentioned and provided for in his will. He spoke of the other uncle of these children having made provision for the girls, and that he would take care of the boy, Harry. The possibility of both his and his sister's passing away before Harry was old enough to properly look after the property was talked over, and because of this possibility the provisions containing the reference to appointment of a guardian was added. And there were other extrinsic facts and circumstances having some bearing on the matter. It appears that H. A. Boehm, named as executor, and Arnold Boehm, who wrote the will and was a witness to it, were well and intimately acquainted with the testator. He had talked over his business affairs, his purposes and intentions with reference to the disposition of his property with them; he had told them in substance that Harry was to have the farm ultimately, but he did not want him to have complete control or jurisdiction over it until he had acquired some experience; and the scrivener testified that he endeavored to express this by the language used in the will. Both these witnesses seemed to have difficulty in clearly expressing their own ideas. This is revealed by their answers to questions propounded, and also clearly revealed by the language chosen by the scrivener in drafting the will. Evidently he was not a lawyer and not very well versed in this important task of preparing wills. When we put ourselves in the position of the testator, we can arrive at no other conclusion than that it was his purpose and intent that the nephew, Harry Rohlfs, should become vested in fee of the remainder estate, subject only to the life estate of Maggie Rohlfs, but that the actual possession of it should be deferred until he reached his majority.

The decree of the trial court is therefore accordingly affirmed. In view of the result reached in this opinion, no ruling on the appellee's motion to affirm is necessary.—Affirmed.

PARSONS, ANDERSON, SAGER, DONEGAN, and KINTZINGER, JJ., concur.