IN RE ESTATE OF SARAH F. KEELER.

ROBERT McCLURE et al., Plaintiffs, Appellees, v. CLYDE H. McCLURE, Executor, and Defendant Pro Se, Appellant.

No. 44505.

NOVEMBER 15, 1938.

Strock, Sloan & Dyer, for appellees.

Dyer, Jordan & Dyer, for appellant.

MITCHELL, J.—The facts in this case are simple and not in dispute. It is the application of the law to the facts which provokes the litigation.

Sarah F. Keeler died testate, a resident of Des Moines, on the 24th day of August, 1936. Her will was duly admitted to probate in Polk County, and an application was later filed by Clyde H. McClure, her son, and executor of her estate, to construe her last will and testament, which is the action with which we are now confronted. The devisees named were her son, Clyde H. McClure, his three sons, Gordon, Douglas and Bruce, and two children, named Lois R. and Robert L. McClure, of Leonard McClure, a son of testatrix who predeceased her. At the time of her death she was the owner of a residence property in Des Moines, about 76 acres of land in Boone County, and a lot in Clear Lake, Iowa, together with personal property consisting of cash, a note, some certificates of interest in various apartment buildings in Chicago, and other miscellaneous items, including jewelry and furniture.

Together with her two sisters Mrs. Keeler inherited from their father about 162 acres of land, of which they were the owners on June 26, 1920, the day they contracted to sell same to one Orson Peterson. The sale was duly made, and deceased and her two sisters received some cash and three notes for $16,000,

each secured by separate mortgages. The mortgage to Mrs. Keeler was duly filed of record. In September of 1935 Peterson and his wife reconveyed the property to Sarah F. Keeler, and received their note and mortgage in return, the mortgage being released. Prior to said time Peterson had paid $4,000 on the principal of the note. The deed whereby the property in dispute was conveyed to Orson Peterson was dated February 14, 1921. The mortgage given by Peterson and his wife to Mrs. Keeler to secure the payment of the $16,000 note, was dated the 25th of February, 1921. The deed by which Peterson and his wife reconveyed the mortgaged property was dated February 25, 1935, and contains the following provisions:

"The other valuable consideration above referred to is the cancellation and surrender of a note dated February 25, 1921, and the release of a mortgage securing said note dated February 25, 1921, and recorded in book 188 at page 144 of mortgages in the Recorder's office of Boone County, Iowa.

"Grantee agrees to pay the last one-half of the 1934 taxes.

"Possession to be given March 1, 1936."

The mortgage was properly released and the note and mortgage surrendered by Mrs. Keeler to Peterson.

The will of Sarah F. Keeler was executed on or about the 17th day of October, 1934. She died on August 24, 1936, without having changed her will.

The paragraphs of the will involved in this controversy are as follows:

"Ninth: I give and bequeath to my son, Clyde H. McClure, the Sixteen Thousand Dollar ($16,000.00) promissory note of Orson Peterson, and the Mortgage on the eighty (80) acre farm in Boone County, near Ogden, Iowa, given as security for the payment of said note, on which Four Thousand Dollars ($4,000.00) has been paid. * * *

"Eleventh: In the event that any other additional sums of money should be left as part of my estate after all cost of administration and other expenses have been paid, and all distributions have been made, according to the terms herein expressed, then I give and bequeath such balance of money to my son, Clyde H. McClure, and to my grandson, Robert L. McClure, to be divided equally between them. * * * "

The lower court found that the surrender and cancellation of the mortgage indebtedness by the testatrix during her lifetime affected an ademption of the bequest contained in paragraph nine of testatrix' will, and that because thereof the real estate received in satisfaction of said note and mortgage securing same passed under paragraph eleven of testatrix' will as a residuary devise, and that said paragraph nine was inoperative.

Clyde H. McClure personally, and as the executor of the last will and testament, has appealed to this court.

I. It is the contention of the appellant that it was the intention of testatrix that the real estate received by her in satisfaction and cancellation of the mortgage indebtedness was to pass under paragraph nine of her last will and testament; that the cardinal rule of the construction of wills is to ascertain the intention of the testator and such intention, where possible, must be given effect.

▉▉▉ There is no dispute in regard to the law concerning this. However, the rule as to intention has reference to intention at the time of the execution of the will, interpreted in the light of the facts and circumstances existing at the time the will is made.

In Brown v. Brown, 213 Iowa 998, 240 N. W. 910, this court said at page 1000, 240 N. W. at page 911:

"The purpose of construction is to ascertain and give effect to the intention of the testator. The will must be construed as an entirety, and effect given as far as possible to each provision. The several provisions should, so far as possible, be harmonized and made subservient to the testator's main purpose."

In the case of In re Estate of Etzel, 211 Iowa 700, 234 N. W. 210, we find the following at page 702, 234 N. W. at page 211:

"The all-important consideration in determining the question before us is to ascertain, if possible, the intent of the testator. When that is clearly and definitely ascertained, it must govern, unless there is some legal impediment in the way."

This court had the following to say in the case of Benham v. Turkle, 173 Iowa 598, at pages 602, 603, 153 N. W. 1017, at page 1018:

"The first duty of the court is to consult the document itself

and, if it is clear and unambiguous in its terms, the controversy must be determined therefrom. As is said in some cases, it is the duty of the court to take the instrument by its four corners, consider all that the instrument contains, and from the whole instrument determine the intention of the testator as to each matter covered by its terms.''

In In re Flannery Estate, 221 Iowa 265, at page 271, 264 N. W. 68, at page 71, the court reiterated the same rule and added:

''The court may not make a will for the testator, nor impose upon the will a forced or unnatural construction to accomplish what may seem to be a more just or appropriate distribution of his estate.''

In the case of Mann v. Seibert, 209 Iowa 76, at page 81, 227 N. W. 614, at page 616, this court said:

''Parol evidence was, under the instant facts not admissible. The testator's intent is to be gleaned from the will. The parol evidence, such as is found here, cannot be considered.''

We find the court used the following language in the case of Gilmore v. Jenkins, 129 Iowa 686, at pages 691, 692, 106 N. W. 193, at page 194, 6 Ann. Cas. 1008:

''Looking again to this fourth paragraph of the will, we discover no ambiguity or doubt therein. * * *

''Primarily, the testator's intent is to be gathered from the will itself. Parol evidence cannot be received to give a will operative elements, language, or provisions not in it before; for such testimony is only admissible for the purpose of affording light whereby what is in a will may be read, understood, and applied. * * *

''We have gone as far as any court in permitting extrinsic evidence in aid of the construction of wills, but have never yet held that such evidence is admissible for the purpose of changing a will, or to aid in the making of a new one—one which the testator intended, but did not in fact make.''

In Boehm v. Rohlfs, 224 Iowa 226, 233, 276 N. W. 105, 109, after discussing former cases, this court said:

''The plain effect of the language as used in a will is not to

be varied by external proof of what effect was really intended. But where the language is more or less obscure, or the meaning is hidden and there exists what is known in the law as a latent ambiguity, parol evidence may be resorted to for the purpose of making intelligible in the will that which cannot without its aid be understood or resolving a doubtful interpretation.''

II. Under paragraph nine of the will there was a specific bequest to Clyde H. McClure of a promissory note and the mortgage given as security for the payment of said note. It is the contention of the appellee, and was the holding of the trial court, that cancellation of the note and mortgage extinguished the subject matter thereof and the bequest was thereby adeemed and became inoperative.

There seems to be some difficulty in recognizing the distinction between the doctrine of ''ademption'' and the doctrine of ''satisfaction.'' Some of the courts do use the word ''ademption'' in considering cases where the question of ''satisfaction'' of a bequest is involved, but it is nevertheless very clear that all of the courts, including our own, recognize the distinction.

In the case of Heilman v. Dakan, 211 Iowa 344, 233 N. W. 542, this court said at page 345, 233 N. W. at page 543:

'' 'Ademption' is properly applied when the legacy is specific, and 'satisfaction' is a more accurate term when the legacy is general, * * *.''

In In re Estate of Brown, 139 Iowa 219, at page 225, 117 N. W. 260, at page 262 we read:

''A general legacy may be satisfied, although not strictly speaking adeemed. It is this which distinguishes ademption from satisfaction. One depends upon the intention of the testator as inferred from his acts, and the other upon the extinction of the thing or fund granted. * * * The doctrine of satisfaction depends very largely, if not altogether, upon the intent of the testator.''

Obviously the question of satisfaction is not involved in the case at bar. The question here is whether the ninth paragraph of the will is a specific bequest. It specifically provides the thing bequeathed, to wit, a $16,000 promissory note of Orson Peterson, and the mortgage on the 80-acre farm in Boone County

given as security. At the time of the death of the testatrix the Peterson note referred to did not exist as part of the assets of the estate. Testatrix herself had canceled the note, had released the mortgage and surrendered the papers to the maker thereof. In other words, the subject of the bequest was extinguished. There is nothing in the will which shows at the time it was made the testatrix had any idea she would acquire this property. She had no interest in the real estate and could not make a devise thereof. The subject matter of the controversy was a promissory note and not real estate, both under the law and in the mind of the testatrix at the time she executed the will. This of course cannot be, and is not denied. Yet appellant seeks to avoid the application of the doctrine of ademption, upon the theory that the subject matter of the bequest still exists but in a changed form; that the facts in this case show a change in form only. With this we cannot agree. At the time the will was made the testatrix owned a note, secured by a mortgage,—personal property. At the time she died she owned real estate, the note and mortgage having been surrendered and canceled; that obligation had been completely wiped out, just the same as if Peterson had paid her in cash.

Appellant cites at length from Corpus Juris. We have no quarrel with the rules cited. We quote from appellant's brief:

"(a) Rule Stated. The test of ademption, it has been said, is such a change in the subject-matter of the legacy as to destroy its identity, a change in the nature of the property, of that character, works an ademption. However, where the property is retained at all times by the testator but the gift is claimed to have been adeemed by a change in its character, there must ordinarily be such a change in form as to render it incapable of identification; slight or immaterial changes will not work an ademption; an alteration which does not wholly destroy the identity of the property is insufficient to adeem the gift, and thus a suspension or temporary discontinuance of business will not adeem a gift of a going business where the stock in trade is kept intact with the purpose present at all times in the testator's mind of resuming business operations."

In the case at bar, however, the specific bequest was a note and a mortgage. It was personal property. Its identity was destroyed. It was paid. It was canceled. It was surrendered. And

at the time of the death of testatrix she was the owner not of personal property but of real estate.

In the case of Elwyn v. DeGarmendia, 148 Md. 109, 128 A. 913, 40 A. L. R. 553, the Maryland Court of Appeals at page 556 of 40 A. L. R. said:

" 'Ademption,' we think is to be sought for in the facts of destruction or loss of the thing specified in the legacy, or loss of its identity as specified, rather than in change of intention on the testator's part. Lord Thurlow, who decided the leading case of Ashburner v. MacGuire, 2 Bro. Ch. 110, 29 Eng. Reprint, 63, 2 Eng. Rul. Cas. 18, after two years of study and reflection (Chaworth v. Beech, 4 Ves. Jr. 555, 556, 31 Eng. Reprint, 285), concluded that the only rule to be adhered to was to see whether the subject of the specific bequest remained in specie at the time of the testator's death, for if it did not, then there must be an end of the bequest; and that the idea of discussing what were the particular motives and intention of the testator in each case, in destroying the subject of the bequest, would be productive of endless uncertainty and confusion. * * * The modern text-writers seem to avoid the view that ademption is to be sought for in change of mind."

In In re Brann, 219 N. Y. 263, 114 N. E. 404, L. R. A. 1918B, 663, the late Justice Cardozo of the Supreme Court of the United States, then a member of the New York Court, said:

"But it is also true that unless the subject of a specific legacy exists, unchanged in substance, at the date of the will, there results an ademption, * * *.

"It was once thought that ademption was dependent on intention, and 'it was, therefore, held in old days that when a change was effected by public authority, or without the will of the testator, ademption did not follow. But for many years, that has ceased to be law.' * * * It has ceased to be law in New York. * * * What courts look to now is the fact of change. That ascertained, they do not trouble themselves about the reason for the change."

And at page 405 we read:

"It is a fallacious argument which would have us say that, because there was no residue when the will was made, we must

construe it in such a way as to make it impossible that there should ever be a residue. It was to provide against the contingency of a possible residue that the residuary clause was framed. The opportunity to change it was given when a codicil was signed; and with knowledge of the condition of the estate, the clause was left the same.''

Mrs. Keeler had knowledge of the condition of her estate after she canceled the note and mortgage. She knew that she had taken title to this real estate but she did not change the will altho she lived approximately a year and a half after she took title.

Appellant relies upon the case of In re Estate of McLaughlin, 97 Cal. App. 485, 275 Pac. 875. The facts in that case are very similar. The rules of law laid down are the same that we have set out in this opinion, yet the California court arrives at the opposite conclusion. Appellees attempt to point out certain distinctions. First, California has a statute, which is cited in the McLaughlin opinion as follows:

''To the same effect section 1303 of the Civil Code provides that:

'' 'A conveyance, settlement, or other act of a testator, by which his *interest* in a thing previously disposed of by his will is altered, but not wholly divested, is not a revocation; but the will passes the property which would otherwise devolve by succession.' '' (Page 877)

It would appear that this statute was probably enacted for the purpose of avoiding the doctrine of ademption, and it does not change the rules which the courts have laid down. The wording of the will in the McLaughlin case is different than in the case at bar. In that case the will was written by the testatrix herself and gave to her husband not the note but the mortgage. We quote from that will (page 876):

''Give and devise to my beloved husband J. D. McLaughlin all of my interest in that certain mortgage against the east half of the north 100 feet of lot 4 block P and Q, 7 and 8 street, Sacramento, California, occupied by Rose Ann Callahan.''

The California court had this to say, at page 877:

'' * * * the testatrix, having executed an holographic will,

probably lacked legal advice informing her of the technical distinction between actual title to real property and the mere equitable interest which is created by a mortgage lien."

There is another distinction: In the will in the case at bar there is a residuary clause, in the McLaughlin case there was not. The California court said, at page 877:

"The construction of a will is preferred which leaves no intestacy as to any part of the estate."

The writer of this opinion is frank to state that he cannot see where there is a marked distinction between the case at bar and the McLaughlin (California) case. We agree upon the rules of law, yet we arrive at opposite conclusions as to the application.

In the case of In re Miller, 128 Iowa 612, at page 617, 105 N. W. 105, at page 106, this court said:

"It is equally well settled that upon sale of devised real property by the testator the proceeds of such sale of which he may die possessed will not be substituted for the property itself, unless a direction so to do is found in the will."

At page 619, 105 N. W. at page 107, this court quotes with approval from a New York case, McNaughton v. McNaughton, 34 N. Y. 201, as follows:

"If there had been a specific devise to the appellants of the farm, the sale of it by the donor in his lifetime would have operated as a revocation of the gift. They would have acquired no interest in the bond and mortgage, though given for a portion of the purchase money. The rule on this subject is well settled."

We are constrained to hold that the bequest was a specific one, and that by canceling and surrendering the note and mortgage and taking title to the real estate there was an ademption, and in so holding the lower court was right.

The writer of this opinion is frank to admit, however, that he feels as did the Massachusetts court when it said in the case of Moffatt v. Heon, 242 Mass. 201, 136 N. E. 123, 124:

"We must hold the legacy in the fourth clause of the will specific, although we cannot but fear, that, if the testatrix had

been fully advised of the consequences of making a legacy specific, she would have changed her will.''

And so in the case at bar, if testatrix had known the consequences we feel she would have changed her will.

III. The last question raised by appellant is that the court erred in construing the will so that the real estate received by testatrix in satisfaction and cancellation of the mortgage indebtedness passes under the eleventh paragraph of the will, which is as follows:

''Eleventh: In the event that any other additional sums of money should be left as part of my estate after all cost of administration and other expenses have been paid, and all distributions have been made, according to the terms herein expressed, then I give and bequeath such balance of money to my son, Clyde H. McClure, and to my grandson, Robert L. McClure, to be divided equally between them.''

We do not find it necessary to discuss this question, for appellant admits that he is not concerned with the court's finding, even if it was erroneous, for he was not in any way adversely affected. If the lower court had placed the construction upon this the appellant desires, appellant would have received one-half of the property as an heir at law. Under the will itself, and under the construction placed upon it by the lower court, he receives one-half of this property. The only person adversely affected by the lower court's ruling is Lois McClure. She has not appealed.

It necessarily follows that this case must be, and it is hereby, affirmed.—Affirmed.

SAGER, C. J., and ANDERSON, KINTZINGER, DONEGAN, RICHARDS, and HAMILTON, JJ., concur.