## IN RE ESTATE OF HENRY F. FINTEL.

HOMER ADDICKS FINTEL, Individually and as Trustee, et al., Petitioners-Appellees, v. ELMER HUGH BEARD et al., Respondents-Appellants.

### No. 47171.

(Reported in 31 N. W. 2d 892)

APRIL 6, 1948.

Hall & Ewalt, of Indianola, for appellants.

E. C. Erwin and Matthew Westrate, both of Muscatine, for appellees.

HAYS, J.—Henry F. Fintel died testate in 1936, leaving surviving him two sons, Edward Charles Fintel and Homer Addicks Fintel; two daughters, Alice Eva Fintel and Lillian Floy Fintel; and two grandsons, Elmer Hugh Beard and Wilbur E. Beard, the children of a deceased daughter, Florence May

Beard. This daughter died prior to the execution of the will in 1930. Wilbur E. Beard died in 1937, a minor, intestate and unmarried, leaving surviving him as his sole heir at law, C. W. Beard. Edward Charles Fintel died intestate in 1942, leaving surviving him a daughter, Frances Fintel, Armbrister. Alice Eva Fintel died in 1945, unmarried, intestate and without descendants.

Under testator's will the personal property is disposed of by Article II thereof. This property has been distributed and is not involved in this case. The real estate is disposed of under Article III of the will, and it is with this property that we are concerned. Homer Addicks Fintel as a trustee and as an individual, and Frances Fintel Armbrister, as petitioners, claim that they together with Lillian Floy Fintel are the owners of the real estate. Elmer Hugh Beard and C. W. Beard, as respondents, make claim to a portion thereof. In order to make a distribution, the trial court was asked to construe the will. After a hearing, it found for petitioners and from a judgment accordingly the respondents appeal.

The material portions of the will are as follows:

"Article II. Any personal property * * * may be sold * * *. The net proceeds to be divided as follows: The share of my personal estate that would have fallen to my daughter, Florence May Beard (deceased) shall be held in trust until her sons, Elmer Hugh Beard and Wilbur E. Beard attain the age of twenty-one years, and be divided equally among them. The remaining four shares is to be divided equally among my Sons, Edward Charles Fintel, Homer Addicks Fintel and my daughters, Alice Eva Fintel and Lillian Floy Fintel.

"Article III. I direct that the net income of my Farm [here described] shall be equally divided among my children named in Article II.

"Ten Years after my decease the above described lands may be sold * * * and the money divided equally among my children named in Article II.

"Should any of my children die before the final distribution of my estate, his or her share shall be given to the descendants of such deceased legatee, if there be any, otherwise to my children named in Article II in equal amounts.

"Any attempt by any one to change or break this will shall cause such person to forfeit all rights and interest in my estate and shall automatically disinherit such person.

"If in the judgment of my executor it will be to the best interests of Elmer Hugh Beard and Wilbur E. Beard and Alice Eva Fintel and Lillian Floy Fintel to hold their shares in trust, he is authorized to do so."

Two errors are assigned on this appeal: (1) The court erred in its determination of the meaning of the will. (2) It was error to receive extrinsic evidence as to testator's intention. While in the construing of a will the particular words of the will being examined must govern, certain well-recognized rules of construction are applicable in all such cases. In the recent case of In re Estate of Schmitz, 231 Iowa 1178, 1181, 3 N. W. 2d 512, 515, quoting from Boehm v. Rohlfs, 224 Iowa 226, 232, 276 N. W. 105, 109, we say:

" 'In construing a will, the first consideration is to ascertain, if possible, the intention of the testator, and to give effect to such intention if lawful and not against public policy. This must be ascertained from the provisions of the will itself where the language is plain and unambiguous. [Citing cases.] * * * But where the language is more or less obscure, or the meaning is hidden and there exists what is known in the law as a latent ambiguity, parol evidence may be resorted to for the purpose of making intelligible in the will that which cannot without its aid be understood or resolving a doubtful interpretation.' "

See, also, Layton v. Tucker, 237 Iowa 623, 23 N. W. 2d 297; In re Estate of Eason, 238 Iowa 98, 26 N. W. 2d 103; McClintock v. Smith, 238 Iowa 964, 29 N. W. 2d 248.

The rule as to the intention of the testator has reference to intention at the time of the execution of the will, interpreted in the light of the facts and circumstances existing at the time the will is made. In re Estate of Keeler, 225 Iowa 1349, 282 N. W. 362. In construing the will not single sections or paragraphs but the entire instrument must be construed and considered together in determining the testator's intention. Anderson v. Anderson, 181 Iowa 578, 164 N. W. 1042; In re Estate

of Huston, 224 Iowa 420, 275 N. W. 149. Where there are no words of grant or gift in a will, but only a direction for a division of the estate at a future time, such direction should be construed as vesting an interest only when such time arrives. McClain v. Capper, 98 Iowa 145, 67 N. W. 102.

By what would be paragraph 3 of Article III of the will as above set forth, if numbered, it is provided:

"Should any of my children die *before* the final distribution of my estate, his or her share shall be given to the descendants of such deceased legatee, if there be any * * *." (Italics added.)

In no other provision of the will is there a word of gift or grant, only that there be a division. While the will speaks as of the date of the death of testator, the above quoted provision, taken in connection with what would be paragraph 2 of Article III, and which is as follows: "Ten Years *after* my decease the * * * lands may be sold * * * and the money divided equally among my children named in Article II" clearly shows that the parties ultimately to receive the proceeds of the land must be determined as of the time of final distribution, which is now. (Italics added.)

Appellants contend that by using the term "my children named in Article II", and Florence May Beard although dead being named, she is a devisee; that under section 633.16, Code of 1946, they take directly under the will. Section 633.16 provides:

"If a devisee die before the testator, his heirs shall inherit the property devised to him, unless from the terms of the will a contrary intent is manifest."

The purpose of this statute is to prevent intestacy. In the case of Gilbert v. Gilbert, 127 Iowa 568, 103 N. W. 789, it is held that where the will contemplates that on the death of the devisee named prior to the death of the testator, the property devised should be otherwise disposed of, this is construed as a clear intention that the antilapse statute (section 633.16) shall not apply. Paragraph 3, Article III, above, says, "Should any of my children die before the final distribution of my estate, his or her share shall be given to the descendants of such deceased

legatee, if there be any * * *." Assuming Florence May Beard to be a devisee, but not so holding, under the clear wording of the will section 633.16 does not apply.

█ It is also argued that the term "children" includes "grandchildren." This is true in some jurisdictions. This court holds otherwise unless from the context of the will such appears to be the plain intent of the testator. See Parish v. Welton, 194 Iowa 1274, 190 N. W. 947; Redinbaugh v. Redinbaugh, 199 Iowa 1053, 203 N. W. 246; Downing v. Nicholson, 115 Iowa 493, 88 N. W. 1064, 91 Am. St. Rep. 175. In both of the foregoing cases the gift was to a class such as "children" or "nephews and nieces", without naming them. However, in the case of In re Estate of Carter, 203 Iowa 603, 213 N. W. 392, we held that when the devise is to a class and the persons in that class are individually named, the devise is presumably a devise to each individual and the death of a devisee prior to the death of the testator does not cause that devise to lapse. Friederichs v. Friederichs, 205 Iowa 505, 218 N. W. 271, holds that a devise to one whom the testator knows to be dead when the will is executed does not lapse on the death of the testator, the will not manifesting a contrary intent. See, also, In re Estate of Everett, 238 Iowa 564, 28 N. W. 2d 21. In the instant will, the term "my children" used in Article III refers to the class named individually in Article II and but for paragraph 3 of Article III, the rule stated in the Carter case, supra, might be applicable.

█ Reading the will as a whole, testator in substance says, when the farm is sold ten years after my death, the proceeds therefrom shall be divided among my children, naming them, and ·if any die prior to that time, his or her share shall be given his or her descendants, then living. An almost identical situation has been before this court, except that in the instant case testator names the group individually in Article II, while in the case of Anderson v. Wilson, 155 Iowa 415, 136 N. W. 134, a group was named merely as a group. In that case, the will gave a life estate to his brother and provided that at his death one-half interest should go to his brothers of the half blood equally and in case any are then deceased his share shall

go to his children equally. The will further provided that if the life beneficiary did not survive testator, he devised one half to his brothers of the half blood equally and in case any are then deceased his share to go to his children equally. At the time the will was executed one brother of the half blood was dead, leaving a son surviving. At pages 420 and 421 of 155 Iowa, page 136 of 136 N. W., the court said:

"But the proposition of the appellees is * * * that the context of the words of the devise, taken in connection with the admitted fact that the father of the appellant was already dead at the date of the will, requires us to restrict its application to the half-brothers living at that date and the children of such half-brothers as may die after the date of the will, but before the testator's death. [Citing Nicholson case, supra.] * * * The distinction between the claim which was adjudicated in the Nicholson case and the one we have here to pass upon is quite obvious. At the risk of wearisome repetition, we recall once more the words of the will, 'to my brothers of the half blood equally and in case any are then deceased, his share to go to his children equally.' This is not a designation of two classes to take in succession, but of a single class, the membership of which is composed of his half-brothers and the children of such half-brothers as may 'then [at the testator's death] be deceased.' Any party to this controversy who takes anything under such devise takes it because he is therein pointed out as the intended beneficiary, and not because the statute or other rule of law substitutes him in the place of or instead of a deceased devisee."

We hold that under the rule announced in the Anderson case the descendants of Florence May Beard are named as devisees of her share. The descendants being named merely as a class, the rule announced in Redinbaugh v. Redinbaugh, supra, applies. It is: that where the gift is to a class without naming them, only those of the class who are living at the time of the vesting of the estate in said class take under such a will. Elmer Hugh Beard is the sole descendant of Florence May Beard living and we hold that he is entitled to a one-fifth share in the proceeds from the sale of the farm.

 Alice Eva Fintel died subsequent to testator's death but prior to the time of the vesting of the devises. She left no descendants. This situation was anticipated by testator as he provides in said paragraph 3 of Article III, that if his dead children had no descendants, then "to my children named in Article II in equal amounts." This provision is in effect a devise of the remainder of the estate. In order to give it effect it must be construed to mean those devisees named in the will who are alive and able to take at the time the same vests. It follows that the share which would have gone to Alice Eva Fintel goes to Elmer Hugh Beard, Homer Addicks Fintel, Lillian Floy Fintel and Frances Fintel Armbrister in equal shares.

 One further question remains and that has to do with the income from the farm. By paragraph 1, Article III, of the will, it is provided that the net income from the farm shall be divided equally among the children named in Article II. While the record is rather vague, we assume that this income has been allowed to accumulate rather than be distributed as it accrued. While we held that under paragraph 2 of Article III, the interest in the proceeds of the sale of the farm is contingent, we do not find such to be the case as to the income. This, we hold to be vested as it accrues, for the reason that if it was to be contingent along with the proceeds of the farm, then paragraph 1, Article III, means nothing and is mere surplusage in view of paragraph 2 thereof.

Under the construction herein announced we hold that the share of the income which would go to Alice Eva Fintel, who died in 1945 without descendants, belongs to Elmer Hugh Beard, Homer Addicks Fintel, Lillian Floy Fintel and Frances Fintel Armbrister in equal shares.

Wilbur E. Beard died in 1937 leaving no descendants, but leaving as his heir at law, C. W. Beard. At the time of his death, income accrued to that date was the vested property of the said Wilbur E. Beard. C. W. Beard, being his sole heir at law, is entitled to this fund, and we so hold. As to this income which has accrued since Wilbur's death, Elmer Hugh Beard takes under this construction hereinbefore announced.

That the above construction of the will expresses the intent of testator is further strengthened by the provisions of the last paragraph of Article III, which provides:

"If in the judgment of my executor it will be to the best interests of Elmer Hugh Beard and Wilbur E. Beard * * * to hold their shares in trust, he is authorized to do so."

If, as claimed by appellees, only the children living at the death of testator were to share in the proceeds of the real estate, then this last paragraph is meaningless. By Article II, dealing with personal property, a trust is provided for the Beard children and this last paragraph can only mean an intention that they share in the real estate.

Holding as we do that the trial court erred in its interpretation of the terms of the will, it is not necessary to determine the second assigned error. The judgment of the trial court is reversed with direction to enter judgment in accordance herewith.—Reversed.

OLIVER, J., concurs.

MULRONEY, C. J., and BLISS and GARFIELD, JJ., specially concur.

HALE, MANTZ, and SMITH, JJ., dissent.

MULRONEY, C. J. (specially concurring)—I concur in the court's judgment and its opinion but I should prefer to reverse the judgment of the trial court on the broader ground that under the circumstances surrounding the testator and the language used in the will, the term "children" includes "grandchildren."

In Parish v. Welton, 194 Iowa 1274, 1277, 190 N. W. 947, 949, we said:

"It is undoubtedly true that the word 'children' may, in some instances, be construed to include grandchildren, where it is evident from the context of the will that such was the plain intent of the testator. Bowker v. Bowker, 148 Mass. 198 (19 N. E. 213)."

We did not so construe the word children in the Parish case for we held "there is nothing in the context of the will to indicate that the intent of the testator was to include grandchildren." But the above statement in the opinion is a clear recognition of what appears to be the almost universal rule. I think it is also the general rule that the term "children" will be held to include grandchildren when the provisions of the will would be inoperative without such construction. This was the rule at common law. In Hodge v. Lovell's Trustee, 262 Ky. 509, 514, 90 S. W. 2d 683, 686, it is stated:

"At common law the import of the term 'children' used as descriptive of persons to take under a will could be enlarged so as to embrace grandchildren (1) from necessity, where the will would be otherwise inoperative, and (2) where the context of the instrument as a whole indicated that the testator did not intend to use the term 'children' in its restricted meaning but in a broader sense, and this rule of construction prevailed in this state previous to statutory regulation on this subject. Kentucky Statutes, secs. 2064, 4841, and 463."

In Spencer v. Title Guarantee Loan & Trust Co., 222 Ala. 221, 223, 132 So. 32, 34, it is stated:

"An oft-quoted rule in this regard ranges such cases into two classes:

" '1st, from necessity—where the will would remain inoperative, unless the sense of the word "children" were extended beyond its natural import and, 2d, where the testator has clearly shown, that he did not intend to use the term "children" in its proper and actual meaning, but in a more extensive sense.' McGuire v. Westmoreland, 36 Ala. 595. * * *

"An examination of the cases here and elsewhere shows this rule is often applied where the general scheme of the will shows a purpose to distribute the estate among the natural objects of the testator's bounty, share and share alike. In such case there is a strong presumption against an intention to disinherit."

A few of the numerous authorities where the term "child" or "children" was held to include grandchildren are: Whit-

taker v. Fitzpatrick, 268 Ky. 120, 103 S. W. 2d 670; Von Fell v. Spirling, 96 N. J. Eq. 20, 124 A. 518; In re Wait's Estate, 42 N. Y. S. 2d 735; Tucker v. Tucker, 259 Ky. 361, 82 S. W. 2d 458; Peak v. Peak, Mo., 195 S. W. 993. See, also, 7 Words and Phrases, Perm. Ed., pages 66 to 69.

The Massachusetts decision (Bowker v. Bowker, 148 Mass. 198, 200, 203, 19 N. E. 213, 214) cited with approval in the foregoing quotation from Parish v. Welton, 194 Iowa 1274, 190 N. W. 947, is quite similar to the instant case. There the testator's daughter, Eunice, was dead at the time the will was executed and in the first clause of the will provision was made that her children would take their "deceased parent's share." The distribution was to be after a life estate in testator's wife, and a later clause provided: " "* * * if any of my children die without issue, their shares are to be added to those of the other children.' " One other daughter died without issue during the pendency of the life tenancy and after the widow died the question was whether Eunice's children would share in the division of the share that would have gone to the other daughter who had died. In holding they would the court stated:

"Even if Eunice was not then living [when the will was executed], the share appropriated to her children might, in the ordinary, if not very accurate, use of language, be spoken of as her share, and thus be included in the phrase shares 'of the other children,' when it is provided that these shall be increased by the decease of any child without issue. Especially is this so when, in the first clause, the share appropriated to the children of Eunice is spoken of as their 'deceased parent's share.' The word 'children' may be interpreted as including grandchildren, representatives of a deceased child, where it can fairly be seen from the context that such was the intention of the testator as exhibited in his will."

In Peak v. Peak, Mo., 195 S. W. 993, 994, the testator's will was drawn after the death of one son, Howard. One clause of the will left a life estate to his wife and a dollar to each of testator's children then living and a dollar each to " 'the heirs. of Howard Peak.' " The next clause left the property at the

death of the wife to be " 'divided equally between all of my children herein named.' " In holding Howard's five children or the testator's grandchildren were within the meaning of the clause "all of my children herein named", the opinion states:

"In this case the father and testator, when making his will, held in mind all of his surviving children, and the further fact that his son Howard Peak had deceased, leaving five children described as the 'heirs of Howard Peak,' and to whom he gave 'one dollar each,' being the same bequest which he made to his living sons named in the will. This will must be construed in the light of the facts that it was made with full knowledge by the testator of the existence of his named children and the death of one, who was also specifically named, leaving five children connoted by the testator as the 'heirs of Howard Peak.' * * * While it is true in a strict grammatical sense that the term 'children' does not necessarily include others than the immediate offspring of the testator, yet it may acquire contextually a broader meaning and include grandchildren, if such was the evident intent of the willmaker as ascertained from a consideration of the conditions and circumstances of the execution of the instrument and the motive and purpose expressed in its language. For, after all, it is the design of the law expressed by the statute of wills that the disposition by a man of his property after his death should reflect his will in that manner, unless the carrying out of his will would run counter to the law itself. In the case at bar it could not be contended with any show of reason that the making of the same provisions for the existing children of the dead son which were made for the living brothers and sisters is opposed to any legal principle. On the contrary, it would be the most natural action on the part of a normal parent and would be in strict conformity with our statutes of descent in case no will had been made. R. S. 1909, §546; 40 Cyc. 1412.

"With these elemental principles in mind, a glance at the language of the present will is sufficient to reveal that it was the lawful intent of the testator by the devise in question to give the children of Howard Peak the same interest in the re-

mainder of his father's estate which was devised to his brothers and sisters."

The above two cases from which quotations have been made illustrate the holdings generally. I think a stronger case is made for the enlarged meaning of the word "children" when the testator's child is dead at the time the will is drawn and some recognition is made in the will that the children of the testator's deceased child are receiving their deceased parent's share. That is the situation in the instant case. In Article II of the will the testator mentions his deceased daughter and then gives to her children "the share that would have fallen to my daughter." Thereafter in Article III he disposes of the income and corpus of his realty. 'and each time provides for division "among my children named in Article II."

This will was in the testator's handwriting. He had in mind that one daughter was already dead, but that she had children who should take her share. He had in mind that others of his sons and daughters might die before his estate would ultimately be distributed and he made provision that their children, if any, should take their deceased parent's share. The design of the will is clearly to leave the income and corpus of his realty to his children who are living at the time fixed for distribution and if any of testator's children be dead, then that share shall go to his or her descendants —testator's grandchildren. There is no reason suggested why the testator would not make the same provisions for the existing children of his dead daughter which were made for the children of his living sons and daughters. By this repeated reference in Article III to "my children named in Article II" where he had recognized the right of the Beard children to take their dead mother's share, the testator showed he had in mind his dead daughter's children when disposing of the realty and its income. Certainly this reference is as strong as the phrase in the Peak case where the will stated "my children herein named."

Add to this reference of the "children named in Article II" the further provision in Article III for a trust of the Beard children's shares, and the conclusion is irresistible that

the testator intended them, as descendants of Florence, to take her share. To hold otherwise would mean this reference to the trust for the Beard children is meaningless. He had already provided in Article II for a trust of their share of the personalty until they became twenty-one. This provision of the will in so far as a trust for the Beard children is concerned would certainly be inoperative or ineffectual unless Article III be construed to pass to the Beard children a share in the realty and its income. This also brings into operation the first part of the common-law rule previously stated where the word "children" will be construed to include grandchildren when otherwise a provision of the will would be inoperative. This is the article of the will where the testator disposes of realty and realty income. In this article he speaks of shares to his children or to their descendants who would be his grandchildren. And he makes specific reference by name to the descendants of a deceased daughter and provides for a discretionary trust for the shares of these named grandchildren. In this discretionary trust provision he brackets the shares of his grandchildren with the shares of his two daughters, Alice and Floy Fintel. I think this clearly shows a purpose and intent to have the Beard children share in the income of the realty and the money realized where the realty is sold ten years after the testator's death.

I agree with the rules of construction stated in the majority opinion to the effect that the entire instrument should be considered and I only wish to add that the law favors a construction of a will as most nearly conforms to the statutory rule of descent and distribution. Fletcher v. Fletcher, 200 Iowa 135, 204 N. W. 410; Marvick v. Donhowe, 191 Iowa 214, 182 N. W. 182.

I think the intent to treat all of his children and all of the descendants of his children, or his grandchildren, with complete equality is perfectly plain from a reading of the entire will. That this construction conforms to the statutory rule of descent is another reason why the will should be so interpreted.

BLISS and GARFIELD, JJ., join in this special concurrence.